IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELA L. J., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )  Case No. 21-CV-336-JFJ |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Angela L. J. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.     General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an

"acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. § 404.1521. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the

decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

In October 2015, Plaintiff, then a 43-year-old female, applied for disability insurance benefits under Title II of the Social Security Act. R. 138-41. Plaintiff alleges that she has been unable to work since July 22, 2015, due to a back injury, knee injury, bilateral carpal tunnel syndrome, problems with her feet, fibromyalgia, arthritis, and high blood pressure. R. 138, 167. Plaintiff's claim for benefits was denied initially and on reconsideration. R. 44-68. ALJ Lantz McClain conducted an administrative hearing and issued a decision on July 17, 2018, denying benefits and finding Plaintiff not disabled. R. 12-20, 25-43. The Appeals Council denied review, and Plaintiff appealed to the United States District Court for the Northern District of Oklahoma. R. 1-6, 791-92. The Court reversed the ALJ's decision and remanded the case to the ALJ on October 19, 2020. R. 807-14. On remand, ALJ Christopher Hunt conducted an administrative hearing and issued a decision on April 19, 2021, denying benefits and finding Plaintiff not disabled. R. 704-37, 745-68. Plaintiff did not file written exceptions and the Appeals Council did not assume

jurisdiction, rendering ALJ Hunt's April 2021 decision the Commissioner's final decision for purposes of this appeal.  20 C.F.R. § 404.984 (c)-(d).  Plaintiff filed this appeal within 60 days of the decision becoming final.  ECF No. 2.

In his April 2021 decision, the ALJ found at step one that Plaintiff engaged in substantial gainful activity from her alleged onset date of July 22, 2015, through December 31, 2015, but that she did not engage in substantial gainful activity from January 1, 2016, through March 31, 2021, her date last insured.  R. 706.  At step two, the ALJ found Plaintiff had the following severe impairments:  lumbar degenerative disc disease, degenerative joint disease of the knees, bilateral carpal tunnel syndrome, and obesity.  R. 707.  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment through the date last insured.  R. 710-11.

After considering Plaintiff's subjective allegations, the objective medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except:

> [S]he can lift ten pounds occasionally and less than ten pounds frequently.  She can sit for six hours in an eight-hour day.  She can stand and walk for two hours in an eight-hour day.  She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl.  She is unable to climb ladders, ropes or scaffolding.  She can frequently grasp, handle and perform fine motor manipulation.  She can occasionally operate pedals and foot controls.

R. 711.  At step four, the ALJ concluded that Plaintiff could not return to her past relevant work.  R. 735.  Based on the testimony of a vocational expert ("VE"), however, the ALJ concluded at step five that Plaintiff could perform other occupations existing in significant numbers in the national economy, including clerical mailer, electronics worker, and printed circuit board screener.  R. 736.  The ALJ determined the VE's testimony was consistent with the information contained in

the Dictionary of Occupational Titles ("DOT"). *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled. R. 737.

**III.    Issues**

Plaintiff raises two points of error in her challenge to the denial of benefits, which the Court reorganizes for clarity: (1) the ALJ failed to follow the treating physician rule with respect to Dr. Dan Springer,[1] and (2) the ALJ's RFC was not supported by substantial evidence. ECF No. 13.

**IV.    Analysis**

    **A.    ALJ Properly Evaluated Dr. Springer's Opinions**

The relevant medical records reveal that Plaintiff's primary care provider, Dr. Springer, regularly treated Plaintiff for back pain and/or knee pain between December 2012 and October 2020. R. 327-430, 434-54, 524-39, 563-99, 612-33, 1126-51, 1315-37. Dr. Springer's treatment consisted of medication management and intramuscular injections. Plaintiff's pain waxed and waned throughout this time, but Dr. Springer's physical examinations consistently found tenderness in Plaintiff's lumbar spine, and occasionally, limited range of motion and an antalgic gait.

In connection with Plaintiff's claim for benefits under her employer's long-term disability plan, Dr. Springer completed a form titled "Capabilities and Limitations Worksheet" for Aetna Life Insurance Company ("Aetna") in December 2015, January 2016, June 2016, and December 2016. R. 655, 664, 681, 684. As relevant to this appeal, Dr. Springer checked boxes indicating

---

[1] Plaintiff also asserts generally that "the ALJ failed to follow the opinions of Dr. Springer, Dr. Bright, and Dr. Coker." ECF No. 13 at 10. Plaintiff does not develop any argument regarding the ALJ's analysis of Dr. Bright's or Dr. Coker's medical source statements and any such argument is waived. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."). Accordingly, the Court's analysis is limited to the ALJ's consideration of Dr. Springer's medical source statements.

Plaintiff had varying degrees of grasping and hand manipulation abilities, ranging from occasional to constant. *Id.*[2] Additionally, Dr. Springer indicated Plaintiff could work a total of four hours per day on the forms he completed in December 2015 and January 2016, but he did not respond to this question on the forms he completed in June 2016 and December 2016. *Id.*

Plaintiff asserts the ALJ failed to follow "the treating physician rule," because he rejected Dr. Springer's opinions that Plaintiff could only work four hours per day and could only occasionally use her hands without providing specific, legitimate reasons for doing so. ECF No. 13 at 11-15.

For claims filed before March 27, 2017, such as Plaintiff's claim, the ALJ must give a treating physician's medical opinion controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not given controlling weight, the opinion is still entitled to deference, and the ALJ must provide "good reasons" for the weight given. 20 C.F.R. § 404.1527(c)(2). The ALJ must consider the following six factors: (1) the examining relationship; (2) the length, nature, and extent of the treatment relationship; (3) supportability of the opinion with relevant evidence; (4) consistency of the opinion with the record as a whole; (5) specialization of the medical source; and (6) any other factors that may support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). If an ALJ rejects a treating physician's opinion, he must give "specific, legitimate reasons" for doing so, based on an evaluation of all the regulatory factors. *Watkins*, 350 F.3d at 1301. However, the ALJ is not required to discuss every factor when deciding how much weight to give a treating physician's

---

[2] The forms define "occasional" as 1-33% or .5-2.5 hours, "frequent" as 34-66% or 2.6-5.0 hours, and "continuous" as 67-100% or 5.1-8 hours. R. 655, 664, 681, 684.

opinion, as not every factor will apply in every case. *See Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). Even if a treating physician's opinion is not entitled to controlling weight, "it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the [applicable] factors . . . for the weight assigned." *Krauser v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011). The question for the reviewing court is whether the ALJ's decision contains specific reasons that make clear the weight assigned to the medical source opinion and the reasons for that weight. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that the proper inquiry is whether the reviewing court "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied").

According to Plaintiff, the ALJ performed no further analysis of Dr. Springer's opinions once he concluded they were not entitled to controlling weight, thereby skipping the second step of the requisite analysis.

The Court rejects Plaintiff's argument. The ALJ's questioning of the VE and his written decision reflect that he considered Dr. Springer's occasional hand limitations and four-hour working restriction, rejected them, and sufficiently explained why. At the administrative hearing, the ALJ posed a hypothetical question to the VE that matched the RFC assessment set forth above, and the VE identified three sedentary, unskilled jobs a hypothetical person with the same age, work history, and education as Plaintiff could perform: clerical mailer, electronics worker, and printed circuit board screener. R. 763-64. The ALJ then presented a hypothetical question that modified the "grasping, handling, and fine motor manipulation" limitations to occasional, and the VE testified that sedentary, unskilled work would be eliminated. R. 764. The ALJ then asked the VE to assume the hypothetical person could only work four hours in an eight-hour period. *Id.* The

VE testified that "the inability to complete an eight-hour day, 40-hour workweek would preclude employment." *Id.* Because the ALJ posed hypothetical questions matching the hand and duration limitations Dr. Springer identified, he clearly considered such limitations.

Moreover, the ALJ discussed Dr. Springer's treatment notes from May 2015 through October 2020 in his written decision, noting Dr. Springer's diagnoses, physical examination findings, and prescribed treatment. R. 714-27.[3] The ALJ also discussed the medical source statements Dr. Springer provided to Aetna, including his opinions that Plaintiff could only use her hands occasionally and work four hours per day. R. 731-33. The ALJ explained that he did not adopt Dr. Springer's occasional hand limitations because they were not supported by the objective medical evidence. R. 729. In reaching this conclusion, the ALJ discussed the findings of consultative examiner, Talisha Nichols, APRN, that Plaintiff had full bilateral wrist rotation; full bilateral motion in her thumbs and fingers; no thenar atrophy; no sensory loss in her first three fingers; and could effectively oppose her thumbs to her fingertips, manipulate small objects, and grasp tools such as a hammer. *Id.* Elsewhere in the decision, the ALJ also noted no surgery or therapy was recommended for Plaintiff's carpal tunnel syndrome. R. 728. Likewise, the ALJ did not limit Plaintiff to working four hours out of an eight-hour day "due to the lack of ongoing support for such limitation by her treating physician." R. 729. The ALJ then explained that Dr. Springer identified the four-hour limitation on some, but not all, the forms he completed and that such limitation was not on the forms Dr. Springer most recently completed. *Id.* Thus, contrary to Plaintiff's assertion, the ALJ explained the inconsistencies between Dr. Springer's opinions and the record as a whole, and his reasons for rejecting them are sufficiently specific. *Cf. Langley v. Barnhart,* 373 F.3d 1116, 1123 (10th Cir. 2004) ("Because the ALJ failed to explain or identify

---

[3] Dr. Springer is a physician at Community Physicians Group ("CPG"). The ALJ used the CPG abbreviation when referring to Dr. Springer's treatment notes in his decision.

8

what the claimed inconsistencies were between Dr. William's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings.").

### B. Substantial Evidence Supports the ALJ's RFC Assessment

Plaintiff also asserts the ALJ's RFC assessment is not supported by substantial evidence, because: (1) the RFC does not "follow" the "overwhelming evidence of her physical impairments" and the opinions of her treating physicians, and (2) the ALJ impermissibly cited to evidence supporting his position while ignoring all the evidence favorable to her. ECF No. 13 at 9-11.

A claimant's RFC is her "*maximum* remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week despite her medical impairments and symptoms. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis in original). In assessing the RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. *Id.,* at *7. In other words, the ALJ must explain the basis for the limitations included in the RFC assessment with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. The ALJ must also "explain how any material inconsistencies or ambiguities in the evidence" of record were considered and resolved. *Id.* Furthermore, if the RFC conflicts with a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id.*

It is well-settled that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). This rule follows from the broader directive that "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the

9

uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (cleaned up).

The ALJ's RFC assessment meets these standards. In arriving at Plaintiff's RFC, the ALJ discussed Plaintiff's testimony and the findings of her treating, consultative, and reviewing physicians. R. 711-34. The ALJ then painstakingly explained how such evidence supported the limitations he included in the RFC assessment. R. 728-30. Additionally, the ALJ not only explained why he did not adopt the medical source opinions that were more restrictive than the RFC, he also explained why he did not adopt the less restrictive medical source opinions. R. 728-34. Thus, the ALJ did not simply "pick and choose" the evidence that was favorable to his position, but rather appropriately considered and weighed all the evidence, including Dr. Springer's opinions as set forth above. Plaintiff fails to identify any evidence undermining the ALJ's conclusion that she could perform a limited range of sedentary, unskilled work. Because Plaintiff points to no evidence the ALJ overlooked, her arguments amount to a request that the Court reweigh the evidence, which it cannot do. *See Oldham,* 509 F.3d at 1257-58 ("We review only the *sufficiency* of the evidence, not its weight . . . . Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views[.]") (cleaned up).

**V.     Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 7th day of February, 2023.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**